**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amin Abd. Rahman Shakur,<br><br>      Plaintiff,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>      Defendants. | No. CIV 18-160-TUC-CKJ<br><br>**ORDER** |

Plaintiff Amin Abd. Rahman Shakur ('Shakur") has filed an Amended Complaint. The Court will order Defendants Ryan and Herman to answer Counts One and Two of the Amended Complaint, will order Defendant Ryan to answer Count Four of the Amended Complaint, and will dismiss the remaining claims and Defendants without prejudice. A Motion for Status (Doc. 10) is also pending before the Court.

I. *Statutory Screening of Prisoner Complaints*

As the Court has previously advised Shakur, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

II. *Amended Complaint*

In his four-count Amended Complaint, Shakur asserts that his rights under the Eighth Amendment, the First Amendment's Free Exercise and Establishment Clauses, the Fourteenth Amendment's Due Process and Equal Protection Clauses, and the Religious Land Use and Institutionalized Persons Act (RLUIPA) are being violated. He names Arizona Department of Corrections (ADC) Director Charles L. Ryan, ADC Pastoral Administrator Kenneth Herman, Corizon Healthcare Inc., and Nurse Practitioner Carol Holmden as Defendants.

In Count One, Plaintiff alleges that his rights under RLUIPA, the First Amendment's Free Exercise and Establishment Clauses, and the Fourteenth Amendment's Equal Protection Clause were violated when Defendants Ryan and Herman denied his request for a halal diet. Although Shakur has been receiving a kosher diet, he is being subjected to mental, physical and spiritual hardship by the interference with his sincerely held religious beliefs and practices. Shakur asserts that, by refusing to offer a halal diet, Defendants Ryan and Herman are favoring Jewish prisoners over Muslims by allowing them to practice their religious dietary law. Shakur also asserts he is subject to the authority and decision-making of a Jewish rabbi who is offended that Muslims receive a kosher diet.

In Count Two, Shakur asserts that Defendants Ryan and Herman are violating his rights under RLUIPA, the First Amendment's Free Exercise and Establishment Clauses, and the Fourteenth Amendment's Equal Protection Clause by failing to provide hot food trays to Muslim prisoners during Ramadan, a month-long holiday observed by fasting from sun-up to sundown. Shakur asserts that general population inmates receive 62 hot meals in a 30 day period, while Muslims only receive eight. Shakur asserts this discriminatory policy mentally and physically affects him and interferes with his sincerely held religious beliefs. Shakur states this is blatant discrimination, especially as compared to Jewish prisoners whose holidays and religious observances are recognized to provide special foods.

In Count Three, Shakur alleges that he has received inadequate medical care in violation of the First Amendment's Free Exercise and Establishment Clauses and the Eighth

Amendment. Shakur alleges he began to experience testicular pain in April or May of 2017 and he submitted a Health Needs Request ("HNR"). After being examined by Holmden, Holmden informed Shakur that it was probably caused by too much masturbation. Shakur found the remark to be inappropriate, unprofessional, and offensive. Shakur subsequently requested he be provided an examination performed by a male provider as being evaluated by a female provider is against his religion. Defendants informed Shakur a female provider is sufficient; Shakur was also informed that Corizon does not weigh religious beliefs in the treatment of prisoners. However, Defendants also asked Shakur to provide documentation, which Shakur provided.[1] Upon Shakur's notification to the unit administrator of Holmden's remarks, the prison administration informed Shakur that it agreed the remarks were inappropriate and it would confer with the Healthcare Administrator; Shakur alleges the Healthcare Administrator did not take any action.

Shakur again complained of continued pain and discomfort and was subsequently examined by a male doctor, who recommended Shakur see a urologist. This recommendation was initially denied, but subsequently approved. Shakur later learned the medical director noted a hernia, of which he had not informed Shakur.[2] Several months later, Shakur was taken to a urologist and prescribed medication and an athletic supporter; Shakur was to have a follow-up appointment after three months. Shakur alleges the medication has been ineffective and, although Shakur has notified Defendants that he is still experiencing pain and a nurse practitioner continues to make consult requests, Defendants have not provided follow-up care. Additionally, Shakur has not been provided with an athletic supporter.

Shakur alleges Corizon has a pattern of abuse and has an ongoing policy and custom of denying specialist/recommended care, which amounts to deliberate indifference. Shakur

---

[1] Although not clearly stated, the Court accepts this statement as meaning documentation that male Muslims should not be examined by female providers.

[2] Shakur points out that Holmden failed to identity the existence of the hernia. However, Shakur makes no allegation the hernia existed when Holmden examined Shakur.

also alleges that, despite a contract with Corizon, Defendant Ryan is aware of ongoing problems with Corizon and is ultimately responsible for Shakur's care and treatment

In Count Four, Shakur alleges the ADC has established a Security Threat Group ("STG") policy in an attempt to control prison gang activity. Shakur has been validated as a member of STG Mau Mau. Shakur denies he is a member of Mau Mau or any other gang. Although Mau Mau has since been decertified as an STG, Shakur continues to be considered as a validated member of Mau Mau and is subject to the same restrictions as a validated member of a certified STG. For example, Shakur's ability to obtain jobs, visitations, and an early release date is restricted due to his validated status. While Shakur has completed a step down program, which has permitted his transfer from maximum custody to a close custody unit, ADC does not have a means for Shakur to completely remove the validation regarding the now de-certified Mau Mau gang other than provide information (i.e., snitch). Shakur asserts he is subject to greater restrictions than those prisoners who are validated members of informal (non-certified) STG's. Shakur alleges ADC has not certified another African group and uses Mau Mau as a means to provide statistical racial representation. Shakur disputes ADC's stated reason that removal of the validation will permit recruitment and the resurrection of Mau Mau is not valid as Shakur is permitted to be housed with other general population prisoners who are not validated as members of an STG.

III. *Civil Rights Claims*

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

IV. *Counts One and Two*

    A. *Free Exercise Clause/RLUIPA*

In order to state a First Amendment, free-exercise claim, a plaintiff must allege that a defendant "substantially burdened" the practice of his religion by preventing him from engaging in a sincerely held religious belief and that the defendant did so without any justification reasonably related to legitimate penological interests. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). Similarly, a plaintiff proceeding under RLUIPA bears the initial burden of demonstrating a prima facie claim that the challenged state action constitutes a substantial burden on the exercise of his religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005).

The free-exercise and RLUIPA substantial burden tests are analyzed under the same jurisprudential framework. *See Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) ("Generally, the term 'substantial burden' in RLUIPA is construed in light of federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of the First Amendment prior to the Court's decision in *Emp't Div. Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878–82 (1990)); *Guru Nanak Sikh Soc. of Yuba City v. Cty. of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006) ("The Supreme Court's free exercise jurisprudence is instructive in defining a substantial burden under RLUIPA.") A substantial burden is one that is "'oppressive' to a 'significantly great' extent. That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). A substantial burden is "more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *United States v. Turnbull*, 888 F.2d 636, 639 (9th Cir. 1989) (internal citation omitted).

Shakur has failed to state a claim under the Free Exercise Clause of the First Amendment or RLUIPA because he has not sufficiently alleged that the lack of a halal diet

and hot meals during Ramadan impose a substantial burden on his religious practice. Shakur does not claim that the kosher diet he is receiving fails to conform to the dietary requirements of Islam. *See e.g. Smith v. Cty. of Nassau*, No. 12-CV-4344 SJF GRB, 2014 WL 2862849, at *5 (E.D.N.Y. June 18, 2014) (citing *Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 144 n. 1 (2d Cir. 2009) ("Halal and Kosher standards may not be identical, but the standards used to prepare a Kosher meal also satisfy the Halal standards because the former is more restrictive."). Further, Shakur does not identify any diet-related disputes that were resolved or would have been subject to resolution by a rabbi. With regard to the temporary deprivation of hot meals during Ramadan, Shakur does not allege any facts to show that this condition amounts to anything more than an inconvenience. Accordingly, Counts One and Two will be dismissed insofar as Plaintiff has alleged a violation of the Free Exercise Clause and RLUIPA.

B. *Establishment Clause*

Liberally construed, Shakur has stated claims against Defendants Ryan and Herman under the Establishment Clause in Counts One and Two.

C. *Equal Protection Clause*

Liberally construed, Shakur has stated claims against Defendants Ryan and Herman under the Fourteenth Amendment's Equal Protection Clause in Counts One and Two.

V. *Count Three*

A. *Eighth Amendment*

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction

of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

1. *Defendant Corizon*

To state a claim under § 1983 against a private entity performing a traditional public

function, such as providing medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). A plaintiff must allege the specific policy or custom and how it violated his constitutional rights. A private entity is not liable merely because it employs persons who allegedly violated a plaintiff's constitutional rights. *See Tsao*, 698 F.3d at 1138-39; *Buckner*, 116 F.3d at 452.

In his original Complaint, Shakur did not allege his constitutional rights were violated as the result of a Corizon policy or custom. In his Amended Complaint, Shakur has conclusorily alleged Corizon has a pattern of abuse and has an ongoing policy and custom of denying specialist/recommended care. However, Shakur's additional allegations still fail to show such a policy or custom. At most, it suggests that a nurse practitioner sought approval for Shakur's follow-up treatment, but that the requests were denied. While that might suggest a potential claim against that reviewing person, it does not establish a policy or custom of Corizon. *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) ("A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee"). Shakur has failed to state a claim against Corizon and Count Three will be dismissed without prejudice as against Corizon.

2. *Defendant Holmden*

Shakur's allegations against Defendant Holmden is that she improperly attributed his testicular pain to too much masturbation and she failed to identify a hernia. At most, these allegations support a claim for negligence, which, as noted above, does not amount to deliberate indifference. *See Clement*, 220 F. Supp. 2d at 1105. Accordingly, Shakur has failed to state a claim for unconstitutional medical care against Defendant Holmden, and this

Defendant will be dismissed without prejudice.

        3. *Defendant Ryan*

While a defendant can be liable under § 1983 for failing to act, the cognizability of a § 1983 claim based on grievance denials depends on several facts, including whether the alleged constitutional violation was ongoing, *see e.g., Flanory v. Bonn*, 604 F.3d 249, 256 (6th Cir. 2010), and whether the defendant who responded to the grievance had authority to take action to remedy the alleged violation, *see Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009). With regard to medical decisions, prison administrators generally are not deliberately indifferent when their failure to act is based upon a medical evaluation; that is, because administrators are not doctors, they have no duty to investigate or override decisions of medical staff. *Cf. Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (finding no deliberate indifference where supervisor signed off on plaintiff's grievance appeal without independently reviewing plaintiff's claims because the supervisor had no independent experience in particular area of medicine and relied on the medical opinions of staff with the relevant expertise).

Shakur's allegations in Count Three are too vague and conclusory to state a claim against Defendant Ryan for inadequate medical care. Most of these allegations are directed against "Defendants" or various "administrations," and it is not clear from the facts alleged how or when Defendant Ryan was made aware of Plaintiff's condition and requests for treatment. Absent such facts, Shakur cannot state a claim based on deliberate indifference. Accordingly, Count Three as to the Eighth Amendment will be dismissed without prejudice.

        B. *Free Exercise Clause*

As previously stated, in order to state a First Amendment, free-exercise claim, a plaintiff must allege that a defendant "substantially burdened" the practice of his religion by preventing him from engaging in a sincerely held religious belief and that the defendant did

so without any justification reasonably related to legitimate penological interests. *Shakur*, 514 F.3d at 884-85. "[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (citation omitted). A substantial burden is "more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Turnbull*, 888 F.2d at 639 (internal citation omitted).

Shakur has failed to state a claim under the Free Exercise Clause of the First Amendment because he has not sufficiently alleged that the examination by a female medical provider imposes a substantial burden on his religious practice. As another district court has stated:

> In a prior case, an Islamic scholar conceded that [the] tenet [that Islamic law prohibits Muslim from showing his penis to any female other than his wife] may be waived in emergency circumstances. *See Rivera v. Smith*, 63 N.Y.2d 501, 506, 483 N.Y.S.2d 187, 472 N.E.2d 1015 (N.Y.1984). However, even if Plaintiff's interpretation of Islamic Law is correct, Plaintiff cannot establish that Defendants were deliberately indifferent to serious medical needs or had a sufficiently culpable state of mind while at the same time admitting that Defendants offered treatment. Plaintiff also fails to establish a constitutional right to receive medical treatment from a male doctor. See *Baker v. Welch*, 2003 WL 22901051, *18 (S.D.N.Y.2003) (noting in dicta that "[a] male prisoner has no constitutional right to be treated by a male doctor.").

*Hamilton v. Conway*, No. 03-CV-527S, 2008 WL 234216, at *7 (W.D.N.Y. Jan. 28, 2008) (vacated in part on other grounds, No. 03-CV-527S, 2008 WL 346156 (W.D.N.Y. Feb. 7, 2008)). This claim will be dismissed without prejudice.

C. *Establishment Clause*

"The Establishment Clause of the First Amendment prohibits any government from enacting a law that would respect the establishment of religion." *Mayweathers v. Newland*, 314 F.3d 1062, 1068 (9th Cir. 2002). The Supreme Court has stated, "This Court has long recognized that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144–45 (1987). Moreover, "in commanding neutrality the Religious Clauses do not require the government to be oblivious to impositions

that legitimate exercises of state power may place on religious belief and practice." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 705 (1994).

The Supreme Court has developed a three-part test to help determine whether an accommodation statute achieves this neutrality by avoiding "'sponsorship, financial support, and active involvement of the sovereign in religious activity.'" *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971) (quoting *Walz v. Tax Comm'n*, 397 U.S. 664, 668 (1970)). A statute survives "an Establishment Clause attack if (1) it has a secular legislative purpose, (2) its primary effect neither advances nor inhibits religion, and (3) it does not foster excessive government entanglement with religion." *Mayweathers*, 314 F.3d at 1068 (citing *Lemon*, 403 U.S. at 612–13).

The secular purpose requirement does not "mean that the law's purpose must be unrelated to religion—that would amount to a requirement that the government show a callous indifference to religious groups, and the Establishment Clause has never been so interpreted." *Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 335 (1987) (internal quotation and citation omitted). Indeed, the Supreme Court has upheld statutes that "alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Id*. Moreover, as to the primary effect, a "statute does not violate the Establishment Clause just because it seeks to lift burdens on religious worship in institutions without affording corresponding protection to secular activities or to non-religious prisoners." *Mayweathers*, 314 F.3d at 1069.

A prison practice of providing medical care irregardless of the sex of the medical provider has a secular purpose and its primary effect is neither to advance nor inhibit religion. Moreover, the practice does not foster excessive government entanglement with religion. *See e.g. Agostini v. Felton*, 521 U.S. 203, 233 (1997) (citation omitted) (the statute, on its face, did not require "pervasive monitoring" to prevent the government from indoctrinating religion). Shakur has failed to state a claim under the establishment clause and this claim will be dismissed without prejudice.

VI. *Count Four*

    A. *Due Process Clause*

The Due Process Clause of the Fourteenth Amendment prohibits the states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In determining whether a procedural due process violation has occurred, the Court must first decide whether Shakur was entitled to any process, and if so, whether he was denied any constitutionally required procedural safeguard. Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to the prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Shakur, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). However, an inmate has no constitutional right to be housed in a particular prison or

1  cellblock and has no constitutional right to a particular security classification status.
2  *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Hernandez v. Johnston*, 833 F.2d 1316, 1318
3  (9th Cir. 1987); *see also DeJesus v. Edgar*, 1998 WL 171272, at *1 (7th Cir. 1998) (plaintiff
4  did not have a liberty interest in remaining in protective custody).

5  Shakur having no constitutional right to a particular security classification status, he
6  has failed to state a claim upon which relief can be granted as to the Due Process Clause.
7  This claim will be dismissed without prejudice.

### B. *Equal Protection Clause*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (citation omitted). A law that does not burden a fundamental right or target a suspect class will be upheld as long as the law is rationally related to a legitimate governmental interest. *Romer v. Evans*, 517 U.S. 620 (1996); *Coakley v. Murphy*, 884 F.2d 1218, 1221–22 (9th Cir.1989). Under the rational basis test, "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

Inmates are not entitled to identical treatment as other inmates merely because they are all inmates. *See Norvell v. Illinois*, 373 U.S. 420 (1963). A mere allegation of inequality is not enough to establish a violation of the equal protection clause – when a suspect class is not implicated, the complainant must allege invidious discriminatory intent. *McQueary v. Blodgett*, 924 F.2d 829, 834 (9th Cir. 1991).

Liberally construed, Shakur has stated a claim as a continuing validated member of

the Mau Mau STG based on his racial identity, without a compelling government interest, against Defendant Ryan under the Fourteenth Amendment's Equal Protection Clause in Count Four.

Accordingly, IT IS ORDERED:

1. Count Three is dismissed without prejudice.
2. Defendants Corizon and Holmden are dismissed without prejudice.
3. Defendants Ryan and Herman must answer the Establishment Clause and Equal Protection Clause claims asserted in Counts One and Two.
4. Defendant Ryan must answer the Equal Protection Clause claim asserted in Count Four.
5. Service having not yet been completed upon Defendants Ryan and Herman, the Clerk of Court must send Shakur a service packet including the Amended Complaint (Doc. 9), this Order, and both summons and request for waiver forms for Defendants Ryan and Herman.
6. Shakur must complete[3] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Shakur fails to comply with this Order.
7. If Shakur does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).
8. The United States Marshal must retain the Summons, a copy of the Amended

---

[3] If a Defendant is an officer or employee of the Arizona Department of Corrections, Shakur must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

- 14 -

1 | Complaint, and a copy of this Order for future use.

2 |     9. The Motion for Status (Doc. 10) is GRANTED to the extent the Court issues
3 | this Order.

4 |     Dated this 23rd day of May, 2019.

_____
Honorable Cindy K. Jorgenson
United States District Judge